IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.  16-238 Erie |
| v. | ) | |
| ERIE COKE CORPORATION, | ) | |
| Defendant. | ) | |

## **COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), files this Complaint and alleges as follows:

## **NATURE OF THE ACTION**

1. This is a civil action for civil penalties and injunctive relief under Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), for violations of the National Emission Standard for Benzene Emissions from Coke By-Product Recovery Plants, promulgated pursuant to section 112 of the CAA, 42 U.S.C. § 7412, at a foundry coke manufacturing facility located in Erie, Pennsylvania (the "Facility"), owned and operated by Erie Coke Corporation ("ECC").

## PARTIES

2. Plaintiff is the United States of America, on behalf of the Administrator of the U.S. EPA. The Attorney General is authorized to bring this action pursuant to sections 113(b) and 305(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7605(a), and 28 U.S.C. §§ 516, 519.

3. Defendant Erie Coke Corporation ("ECC") is headquartered at the Facility in Erie, Pennsylvania and incorporated under the laws of the State of Pennsylvania.

4. At all times relevant to this action ECC has owned and operated the Erie Facility and its coke by-product recovery and manufacturing plant.

5. ECC is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and applicable federal and state regulations promulgated under the statute.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the defendant and subject matter jurisdiction over this action pursuant to section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, 1355.

7. Venue is proper in this district pursuant to section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), 1395(a), because the Western District of Pennsylvania is where the Facility is located and where ECC has its principal place of business.

## **STATUTORY AND REGULATORY BACKGROUND**

8. The CAA, 42 U.S.C. §§ 7401–7671q, establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

9. Section 112(b)(1) of the CAA, 42 U.S.C. § 7412(b)(1), sets forth a list of hazardous air pollutants ("HAPs"). Section 112(b)(2) of the CAA requires the Administrator of the EPA (the "Administrator") periodically to review and revise the list set forth in Section 112(b)(1) and, where appropriate, add pollutants that present or may present a threat of adverse human health or environmental effects. Section 112(b) of the CAA designates benzene as a HAP. 42 U.S.C. § 7412 (b), 42 Fed. Reg. 29332 (June 8, 1977).

10. Section 112(c) of the CAA, 42 U.S.C. § 7412(c), requires EPA to publish a list of categories and subcategories of major and area sources of listed HAPs.

11. Section 112(d) of the CAA, 42 U.S.C. § 7412(d), requires EPA to promulgate emission standards for each category or subcategory of major and area sources of listed HAPs. These emissions standards are called National Emissions Standards for Hazardous Air Pollutants ("NESHAP"), and are found at 40 C.F.R. Parts 61 and 63.

12. The General Duty Clause, Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), provides in pertinent part as follows:

> The owners and operators of stationary sources producing, processing, handling or storing [any extremely hazardous] substances have a general duty in the same manner and to the same extent as Section 654 of Title 29 [29 U.S.C. § 654] to identify hazards which may result from such releases [from any extremely hazardous substance] using appropriate hazard assessment techniques, to design

3

and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur.

13. Section 113 of the CAA authorizes EPA to commence a civil action for injunctive relief and civil penalties against any person who has violated any requirement or prohibition of the Act or regulations promulgated thereunder, or who has violated an applicable permit or implementation plan. The United States may seek penalties of up to $32,500 per day for each violation occurring between March 15, 2004 and January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009. 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701; 40 C.F.R. § 19.4.

### NESHAP General Duty Requirement

14. 40 C.F.R. § 61.12(c) imposes on owners or operators of stationary sources a general duty to "maintain and operate the source, including associated equipment for air pollution control, in a manner consistent with good air pollution control practice for minimizing emissions."

### NESHAP for Benzene Emissions from Coke By-Product Recovery – NESHAP Subpart L

15. Pursuant to authority granted to the Administrator by Sections 112 and 114 of the CAA, 42 U.SC. §§ 7412, 7414, EPA promulgated 40 C.F.R. Part 61, Subpart L, §§ 61.130 through 61.139, establishing the National Emission Standard for Benzene Emissions from Coke By-Product Recovery Plants (the "benzene NESHAP"). 54 Fed. Reg. 38,073 (September 14, 1989).

4

16. 40 C.F.R. § 61.131 defines "coke by-product recovery plant" as "any plant designed and operated for the separation and recovery of coal tar derivatives (by-products) evolved from coal during the coking process of a coke oven battery."

17. 40 C.F.R. § 61.131 defines "in benzene service" as "a piece of equipment, other than an exhauster, that either contains or contacts a fluid (liquid or gas) that is at least 10 percent benzene by weight or any exhauster that either contains or contacts a fluid (liquid or gas) at least 1 percent benzene by weight as determined by the provisions of §61.137(b)."

18. 40 C.F.R. § 61.132(a)(1) requires owners or operators of foundry coke by-product recovery plants to enclose and seal all openings on each process vessel, tar storage tank, and tar-intercepting sump.

19. 40 C.F.R. § 61.132(a)(2) requires owners or operators of foundry coke by-product recovery plants to duct gasses from each process vessel, tar storage tank, and tar intercepting sump to the gas collection system, gas distribution system, or other enclosed point in the by-product recovery process where the benzene in gas will be recovered or destroyed.

20. Under 40 C.F.R. § 61.132(b), following the installation of any control equipment to come into compliance with 40 C.F.R. § 61.132(a), owners or operators must monitor connections and seals on each control system to determine if it is operating with no detectible emissions (as indicated by an instrument reading of less than 500 ppm above background and visual inspections), using Method 21 and procedures specified in 40

C.F.R. § 61.245(c), and shall visually inspect each source (including sealing materials) and the ductwork of the control system for evidence of visible defects such as gaps or tears.

21. 40 C.F.R. § 61.132(d) requires owners or operators of furnace coke by-product recovery plants to comply with the sealing, ducting and monitoring requirements of Section 61.132 with regard to light-oil storage tanks and excess ammonia-liquor storage tanks.

22. 40 C.F.R. § 61.135(d)(2) requires that when a leak is detected, it shall be repaired as soon as practicable, but no later than fifteen calendar days after it is detected. A first attempt at repair must be made no later than five calendar days after detection.

23. 40 C.F.R. § 61.138(b) provides a list of information that must be recorded and maintained for two years following each semiannual (and other) inspection and each annual maintenance inspection, including (1) the date of the inspection and the name of the inspector; (2) a brief description of each visible defect in the source or control equipment and the method and date of repair of the defect; (3) the presence of a leak, as measured by Method 21, and the date of attempted and actual repair; and (4) a brief description of system abnormalities found during annual maintenance inspections, the repairs made, the date of attempted repair, and the date of actual repair.

24. 40 C.F.R. § 61.138(e)(1) requires owners and operators to submit a report in writing notifying the Administrator that the requirements of 40 C.F.R. Part 61 Subparts L and V have been implemented. The report must include the following information: (1) the type of source; (2) for equipment in benzene service, the equipment identification number

and process unit identification, percent by weight benzene in the fluid at the equipment, and process fluid state in the equipment (gas/vapor or liquid); and (3) method of compliance with the standard, including whether the source will be a furnace or foundry coke by-product recovery plant for purposes of 40 C.F.R. § 61.132(d). 40 C.F.R. § 61.138(e)(2) provides that the initial report must be submitted within 90 days of the effective date, which is the date of the regulation's promulgation, unless a waiver of compliance is granted.

25. Pursuant to 40 C.F.R. § 61.138(f), owners and operators must submit a semiannual 40 C.F.R. Part 61 Subpart L and V report, starting six months after the initial report required by 40 C.F.R. § 61.138(e)(1), which details additional information, including revisions if changes have occurred since the initial report or subsequent revisions to the initial report.

**NESHAP for Equipment Leaks (Fugitive Emission Sources) – NESHAP Subpart V**

26. Pursuant to Sections 112 and 114 of the CAA, EPA promulgated the "National Emission Standard for Equipment Leaks (Fugitive Emissions Sources)," 40 C.F.R. Part 61, Subpart V, §§ 61.240 through 61.247 ("NESHAP Subpart V"). 49 Fed. Reg. 23,513 (June 6, 1984).

27. 40 C.F.R. § 61.245(b)(1) requires owners and operators to comply with Method 21 when testing equipment for leaks. 40 C.F.R Part 60, Appendix A, Method 21.

**NESHAP for Benzene Waste Operations – NESHAP Subpart FF**

28. Pursuant to Sections 112 and 114 of the CAA, 42 U.S.C. §§ 7412 and 7414, EPA promulgated the "National Emissions Standards for Benzene Waste Operations," 40 C.F.R. Part 61, Subpart FF, §§ 61.340 through 61.359 ("BWON NESHAP"). 55 Fed. Reg. 8,346 (March 7, 1990).

29. 40 C.F.R. § 61.340(a) provides that the BWON NESHAP applies to owners or operators of coke by-product recovery plants, among other sources.

30. 40 C.F.R. § 61.355(a) requires owners or operators of a coke by-product recovery plant to determine the total annual benzene ("TAB") quantity from facility waste. To calculate the TAB quantity, owners and operators must calculate the annual benzene quantity by multiplying the annual waste quantity for each waste stream by the flow-weighted annual average benzene concentration for each waste stream. The annual benzene quantity for each waste stream generated for the year must then be added to the annual benzene quantity for each process unit turnaround waste annualized to get the TAB quantity.

31. 40 C.F.R. § 61.355(b) provides that, for purposes of calculating the TAB, owners or operators must determine the annual waste quantity at the point of waste generation by one of the methods enumerated in § 61.355(b)(5) though (7), unless otherwise provided.

32. 40 C.F.R. § 61.355(a)(4)(i) provides that, if the TAB quantity from facility waste is less than 10 megagrams per year (Mg/yr) but is equal to or greater than 1 Mg/yr,

8

the owner or operator shall comply with the recordkeeping requirements of § 61.356 and reporting requirements of § 61.357 of the BWON NESHAP, which requires each owner or operator of a coke by-product recovery plant to submit to the Administrator within 90 days after January 7, 1993, or by the initial startup for a new source with an initial startup after the effective date, a report that summarizes the regulatory status of each waste stream subject to 40 C.F.R. Part 61, Subpart FF.

33. 40 C.F.R. § 61.357(c) provides that a report, providing the information listed in § 61.357(a)(1) through (3), shall be submitted annually and whenever there is a change in the process generating the waste stream that could cause the TAB quantity from facility waste to increase to 10 Mg/yr or more.

34. Section 112(i)(3) of the CAA, as amended, 42 U.S.C. § 7412(i)(3), states that: "After the effective date of any emissions standard, limitation or regulation promulgated under this section and applicable to a source, no person may operate such source in violation of such standard, limitation or regulation . . . ."

35. Section 113(a)(3) of the CAA, 42 U.S.C. § 7413(a)(3), authorizes EPA to bring a civil action if the Administrator finds that any person is in violation of, inter alia, any regulation promulgated under Section 112 of the CAA, 42 U.S.C. § 7412.

36. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, and to assess a civil penalty for each day of each violation.

37. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), provides, in part, that the Administrator of the EPA shall "commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day for each violation, or both," against an owner or operator of an affected source.

38. Pursuant to 40 C.F.R. § 19.4, the amount of civil penalties for violations recovered under section 113(b) of the CAA, 42 U.S.C. § 7413(b), may not exceed $37,500 per day for each violation, for violations that occurred after January 12, 2009.

## GENERAL ALLEGATIONS

39. The Facility is a "coke by-product recovery plant," as defined at 40 C.F.R. § 61.131.

40. Erie Coke is an "owner and operator," as defined at section 112(a) (9) of the CAA, 42 U.S.C. § 7412(a)(9), of a coke by-product recovery plant.

41. Erie Coke's coke by-product recovery plant emits or may emit "air pollutants," as defined in section 302(g) of the CAA, 42 U.S.C. § 7602(g).

42. Erie Coke's coke by-product recovery plant is a "stationary source," as that term is defined in section 111(a)(3) of the CAA, 42 U.S.C. § 7411(a)(3).

43. Erie Coke's coke by-product recovery plant contains or employs in its processes some or all of the following equipment: "flushing-liquor circulation tanks," "light-oil condensers," "light-oil decanters," "process vessels," "tar decanters," "tar storage tanks," "wash-oil circulation tanks," "wash-oil decanters," or other pieces of equipment "in benzene service," as each is defined at 40 C.F.R. § 61.131.

10

44. On November 10, 2010 through November 16, 2010 and March 9, 2015 through March 12, 2015, the National Enforcement Investigation Center ("NEIC") and EPA Region 3 conducted Clean Air Act compliance evaluations at the Facility.

45. During the inspections described above, the inspection teams discovered evidence of a number of violations of environmental statutes and regulations.

## FIRST CLAIM
### NESHAP General Duty Requirement
### Violation of 40 C.F.R. §61.12(c)

46. Paragraphs 1 through 45 are re-alleged and incorporated herein by reference.

47. On a continuous basis since at least November 2010, ECC failed to minimize leaks of benzene from the Facility by-products area. ECC failed to identify and seal several process vessels, including two tar settlers, a hot drain tank and an absorber/thionizer unit, and continuously failed to identify potential sources of benzene emissions from October 1, 1991, when it reported its compliance with Subpart L, until March 9, 2015, when NEIC reinspected the coke by-products facility and found the uncovered absorber/thionizer unit and 13 potential sources of benzene emissions that had not been listed on any Facility compliance report or TAB analysis. ECC therefore violated 40 C.F.R. § 61.12(c) by failing to maintain and operate the Facility's by-products area in a manner consistent with good air pollution control practice for minimizing emissions.

48. Unless restrained by an Order of the Court, these violations of the Clean Air Act and its implementing regulations will continue.

49. Pursuant to Section 113(b) of CAA, 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, 31 U.S.C. § 3701, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and its implementing regulations, 40 C.F.R. § 19.4, and Section 304(a) of the CAA, 42 U.S.C. § 7604(a), ECC is liable for a civil penalty of up to $37,500 per day for each violation alleged in paragraph 54.

## SECOND CLAIM
### Failure to enclose and seal all openings on process vessels
### Violation of 40 C.F.R. § 61.132(a)(1)

50. Paragraphs 1 through 49 are hereby incorporated by reference.

51. From November 10-16, 2010, EPA inspectors from NEIC conducted an inspection of Erie Coke's facility in Erie, Pennsylvania (the "2010 Inspection").

52. At the time of the 2010 Inspection, two of three tar settlers at the Facility were in service.

53. The tar settlers at the Facility meet the definitions of "tar decanter" and "process vessels." 40 C.F.R. § 61.131.

54. At the time of the 2010 Inspection, a hot drain tank was in service.

55. The hot drain tank collects drip-leg fluid containing flushing liquor and therefore meets the definitions of "tar decanter" and "process vessel." 40 C.F.R. § 61.131.

56. NEIC inspectors observed that the tar settlers in service and the hot drain tank were not sealed "process vessels," as required by 40 C.F.R. § 61.132.

57. The two tar settlers had covers with openings to the atmosphere.

12

58. The hot drain tank had a vent directly to the atmosphere in addition to piping that was not sealed.

59. During the 2010 Inspection, Erie Coke was working on sealing the piping to the hot drain tank.

60. Erie Coke is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation of 40 C.F.R. § 61.132(a)(1) that occurred after January 12, 2009, as provided by section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), and 40 C.F.R. Part 19.4.

### THIRD CLAIM
**Failure to monitor process vessels**
**Violation of 40 C.F.R. § 61.132(b)**

61. Paragraphs 1 through 60 are hereby incorporated by reference.

62. During the 2010 Inspection, NEIC personnel observed that Erie Coke had not identified the tar settlers and hot drain tank referenced above as process vessels.

63. Erie Coke failed to conduct monitoring on the tar settlers and hot drain tank as required by 40 C.F.R. § 61.132(b).

64. Erie Coke is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation of 40 C.F.R. § 61.132(b) that occurred after January 12, 2009, as provided by section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b) (2), and 40 C.F.R. Part 19.4.

### FOURTH CLAIM
**Failure to maintain and repair control system**
**Violation of 40 C.F.R. § 61.132(c)**

65. Paragraphs 1 through 64 are hereby incorporated by reference.

13

66. Documents reviewed during the 2010 Inspection show that, on May 12, 2010, Erie Coke conducted an annual maintenance inspection and found a defect on the #1 tar decanter. The documentation noted that the cable cover was perforated. The date of correction was listed as June 16, 2010.

67. Erie Coke did not repair the defect within 15 days of detection.

68. In addition, no first attempt at repair within 5 days was listed on the document.

69. Erie Coke submitted a semi-annual report to EPA on July 8, 2010, that states the annual maintenance inspection was conducted on May 23, 2010 and a new cover was fabricated and installed on June 16, 2010. The date listed in Erie Coke's semiannual report does not match the documentation of the annual maintenance inspection, referenced above.

70. Erie Coke's failure to initiate repairs of the equipment leak within five calendar days of detection constitutes a violation of the benzene NESHAP, specifically 40 C.F.R. § 61.132(c).

71. Erie Coke's failure to complete repairs of the equipment leaks within fifteen calendar days of detection constitutes a violation of the benzene NESHAP, specifically 40 C.F.R. § 61.132(c).

72. Erie Coke is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation of 40 C.F.R. § 61.132(c) that occurred after January 12, 2009, as provided by section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), and 40 C.F.R. Part 19.4.

14

# FIFTH CLAIM
## Failure to submit a complete statement of implementation
## Violation of 40 C.F.R. § 61.138(e)

73. Paragraphs 1 through 72 are hereby incorporated by reference.

74. A statement notifying the Administrator that the requirements of 40 C.F.R. Part 61, Subpart L, had been implemented was not submitted within 90 days of the effective date of Subpart L, September 14, 1989.

75. Erie Coke requested a compliance waiver for Subpart L on December 1, 1989. The proposed timeline extension was to September 15, 1991. Erie Coke submitted a letter to EPA Region 3 on October 1, 1991, that stated it was meeting the requirements set forth in Subpart L.

76. The October 1, 1991 letter to EPA and previous correspondence do not contain the information required by 40 C.F.R. § 61.138(e) (4) for each source of benzene.

77. Erie Coke failed to provide the following in its statement to EPA:

a. identification of all affected sources;

b. each type of source;

c. equipment in benzene service (including equipment identification number and process unit identification, percent by weight of benzene in the fluid at the equipment, process fluid state in the equipment (gas/vapor or liquid)); and

d. method of compliance with the standard for all sources.

15

78. Erie Coke is liable for injunctive relief under 40 C.F.R. § 61.138(e) (4), which requires that it file a complete statement of implementation, and civil penalties of up to $37,500 per day for each violation of 40 C.F.R. § 61.132(b) that occurred after January 12, 2009, as provided by section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b) (2), and 40 C.F.R. Part 19.4.

## SIXTH CLAIM
### Failure to accurately calculate and report TAB
### Violation of 40 C.F.R. § 61.355(a)

79. Paragraphs 1 through 78 are hereby incorporated by reference.

80. Erie Coke did not include all waste streams on its original TAB report.

81. Erie Coke's original TAB report, initially submitted in 1990 with a follow-up letter on March 18, 1993, indicated that "weak liquor" was the only Subpart FF applicable waste stream at Erie Coke.

82. During the 2010 and 2015 Inspections, NEIC identified a number of additional streams at the Facility that are required to be included in the TAB report but were not. These included:

- coke oven gas drip leg condensate (multiple locations);
- overflow from absorber/thionizer to sulfur slurry pits;
- tar decanter sludge; and
- tar settler tar (since settlers had not been controlled).

83. Erie Coke stated in its 1990 TAB report that the annual benzene quantity was 0.059 Mg/yr.

16

84. Erie Coke did not have flow rates for the drip legs to the hot drain tank and overflow from the absorber/thionizer. Without this data, a complete total annual benzene quantity could not be calculated.

85. Erie Coke did not include all waste streams on its original TAB report.

86. As of the 2010 and 2015 Inspections, Erie Coke failed to accurately calculate and report its TAB quantity, as required by 40 C.F.R. § 61.355(a).

87. Erie Coke is liable for injunctive relief and civil penalties of up to $37,500 per day for each violation of 40 C.F.R. § 61.355(a) that occurred after January 12, 2009, as provided by section 113(b)(2) of the CAA, 42 U.S.C. § 7413(b)(2), and 40 C.F.R. Part 19.4.

**WHEREFORE**, Plaintiff the United States of America prays that this Court:

1. Order Defendant Erie Coke Corporation to: prepare a complete statement of implementation, as required by 40 C.F.R. § 61.138(e); accurately calculate and report its Total Annual Benzene, as required by 40 C.F.R. § 61.355(a), and perform a comprehensive benzene leak detection analysis and repair all leaks as required by 40 C.F.R. § 61.132;

2. Order Defendant Erie Coke Corporation to pay the United States a civil penalty not to exceed $37,500 per day for each violation, and assessed in accordance with the factors stated at section 113(e)(1) of the CAA, 42 U.S.C. § 7413(e)(1); and

3. Grant such other relief as this Court deems just and proper.

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division

*/s/ Nathaniel Douglas*

NATHANIEL DOUGLAS
Deputy Section Chief
Environmental Enforcement Section

*/s/ Elliot Rockler*

ELLIOT M. ROCKLER
Trial Attorney
Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 514-2653
elliot.rockler@usdoj.gov


DAVID J. HICKTON
United States Attorney
Western District of Pennsylvania


By:   s/Paul E. Skirtich

PAUL SKIRTICH
Assistant United States Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7418
PA ID No. 30440